ALBERT MARTIN, AND EPHRAIM CUTTER, EXECUTOR OF THE LAST WILL AND TESTAMENT OF SAMUEL DALLY, DECEASED, PROSECUTORS, v. THE TOWNSHIP OF WOODBRIDGE, IN THE COUNTY OF MIDDLESEX, AND VALLEY COMPANY, RESPONDENTS.

Argued June 6, 1917—Decided June 19, 1917.

1. Where lands have been sold by the proper officer to make taxes in arrears levied against land under the provisions of section 53 of the act of 1903 (*Comp. Stat.*, *p.* 5134), it is lawful to add to the taxes in arrears for the current year, to make which a sale has been ordered, all arrears of taxes for which the land has been sold and purchased by the taxing district to the extent necessary to pay the cost of redemption, whether the taxes accrued prior to the date when the act of 1903 went into effect or thereafter.

2. The fact that the township clerk in furnishing the collector with a statement of all taxes in arrears erroneously included an installment of a sewer assessment not yet due, will not vitiate the sale when it appears that the collector before making the sale corrected the error by deducting the installment and did not include it in the amount for which the sale was made, nor will the fact that the clerk included in the amount certain costs not properly chargeable make the sale illegal if in fact the sum for which the land was sold was not more, excluding the fees, than the true amount due.

3. Proof by the collector making the sale that he posted advertisements thereof in five of the most public places of the taxing district, is not overcome by the fact that two of the places were sometimes closed during business hours.

4.  It is not necessary that the notice of sale for unpaid taxes put up by the collector shall contain a statement that the land will be sold in fee if no one should bid for a shorter term. The statute makes it the duty of the officer to make the sale in fee if no one shall bid for a shorter term, and it is not necessary to advertise the terms of the statute.

On *certiorari.*

Before Justices Swayze, Bergen and Black.

For the prosecutors, *Charles C. Hommann.*

For the respondents, *J. H. Thayer Martin.*

The opinion of the court was delivered by

Bergen, J.   On the 31st day of July, 1916, the collector of the township of Woodbridge, in the county of Middlesex, sold at public auction a parcel of real estate for unpaid taxes to the defendant Valley Company, in fee, for the sum of $2,077.13, and thereupon issued to the purchaser a certificate of the sale as authorized by statute. The prosecutors were allowed a writ of *certiorari* to review the proceedings upon which the tax certificate is based, and also for an order setting aside the sale and certificate. The material facts, which are not in dispute, are as follows: The land was assessed in the name of the owner, Charles S. Demarest, for the years 1894 to 1911, inclusive, and in the name of the estate of Samuel Dally for the years 1912 to 1915, inclusive; that in 1895 the land was sold for taxes assessed for the year 1894, and were also sold in 1898, 1900 and 1908 for the taxes of the next preceding year, the township in each case being the purchaser. The sales in 1895, 1898 and 1900, being for the period of thirty years, and those of 1904 and 1908 being in fee. After the foregoing sales the township continued to levy the taxes against the land in the name of the owner and no taxes being paid after the sale of 1908, nor the land redeemed from the effect of the prior sales, the township committee, March 15th, 1916, adopted a resolution directing the collector to sell the land

to raise the taxes levied for the year 1914 and for all other taxes in arrears.

The township clerk certified to the collector the amount of unpaid taxes for the years 1894 to 1915, inclusive, and also an unpaid sewer assessment. When the collector came to make the sale it was found that of the sewer assessment $33 was not then due and the collector deducted that sum from the amount certified and added to the balance thus ascertained, the expenses and costs of the sale, making a total of unpaid taxes, interest, sewer assessment and expenses of $2,-077.13 for which the land was sold and purchased by the Valley Company.

The sale was made by virtue of section 53 of the Tax act of 1903 (*Comp. Stat., p.* 5134), which provides that where land has been sold and purchased by a taxing district, the subsequent taxes shall be levied as if no sale had been made and shall remain a paramount lien on the land, and that no further sale shall be made unless directed by the governing body of the municipality assessing the taxes, in which case the clerk of the taxing district shall certify to the collector the amount required to be paid to redeem the land from the previous sales, and that the collector shall sell the land for the amount thereof to be added to the tax for the current year. In the present case, the sale was made for taxes levied in the year 1915, and to it was added all unpaid taxes, the result being to raise a sufficient sum to pay all taxes in arrears and also to redeem the land from the prior sales to the taxing district.

The first reason which the prosecutor argues why this tax sale should be set aside is, that the certificate of the township clerk of the amount to be added to the current taxes included the tax for the years between 1894 and 1903, the date of the act which permitted the adding of anterior unpaid taxes to those of the current year for which the sale was to be made, it being urged that the act of 1903 had no application to taxes accrued previous to that date, because, although section 53 of the act of 1903 declares that "where a parcel of land has been purchased and is held by the taxing district under a tax sale

not redeemed, all subsequent taxes * * * shall be and remain a paramount lien on the land and be added to the purchase-money and shall be paid before the land can be redeemed from the sale," it is provided by section 66 (*Comp. Stat., p.* 5141), "this act shall take effect on the 20th day of December, 1903, and its provisions shall extend to proceedings on and after that date relating to taxes assessed in the year 1903, but not to proceedings relating to taxes assessed in prior years." Section 66 appears to be a legislative declaration that the act of 1903 shall not apply to proceedings relating to taxes theretofore assessed, and that the collection of prior unpaid taxes cannot be enforced in the method provided by section 53, which relates to cases where, at a prior tax sale, the taxing district became the purchaser. By the statute of 1902 (*Pamph. L., p.* 447) all unpaid taxes assessed after the 1st day of January, 1898, were made a first lien for and during the period of five years next after the date on which they become delinquent, and by section 2 of the same act taxes thereafter assessed were made a paramount lien for five years, but this act was repealed in 1903 (*Pamph. L., p.* 446), with the proviso that the repealer should not effect the proceedings or remedies relating to taxes assessed prior to 1903. The effect of this repealer was to restore the status existing prior to its adoption, the limitation of five years being removed, and the proceedings and remedies relating to taxes assessed prior to December 20th, 1903, restored.

By the statute of 1879 (*Pamph. L., p.* 298; *Comp. Stat., p.* 5188), it was enacted that where real estate theretofore or thereafter sold, for non-payment of taxes, assessments or water rents was purchased by the taxing district, or by any person in its behalf, subject to the right of redemption, the taxes, assessments and water rents should continue to be assessed upon the land for subsequent taxes, but that it should not be necessary to sell the land for non-payment, and that such taxes and assessments should remain a first lien upon the lands to be paid before it could be redeemed, but this does not provide for a sale for unpaid taxes for which a sale had been made, so the situation is, that as to taxes assessed prior

to 1903, and for which the land assessed had been sold and purchased by the taxing district, the right of redemption and not of resale existed, and the only question now presented is whether in making a sale under section 53 of the Tax act the cost of redemption may be added to the amount of the current taxes for which a sale is to be made. We do not perceive any difference between selling to make a current tax subject to a right of redemption from a prior sale, and a sale to make current taxes which shall include the amount necessary to pay the redemption fee. The sale made under the act of 1903 is in fee unless the bidder will take it for a shorter term, and the purchase of a fee, subject to the cost of redemption, would require the payment of the latter cost, for it cannot be assumed that the legislature ever intended by implication what it has not expressly declared, viz., that a sale of land for unpaid taxes for a current year under the act of 1903 would deprive the taxing district of its right to claim, and be paid the taxes in arrears for which it had purchased the land and was holding subject to the owner's right of redemption. We are therefore of opinion that when a sale of land is made under the act of 1903, the taxing district may add to the current tax, for which a sale is about to be made, the amount required to be paid to redeem the land from the effect of all prior sales at which a taxing district became the purchaser. In matters of taxation all doubtful questions must be resolved in favor of the right of the state to enforce the payment of taxes levied to sustain the government.

The next point is, that as some of these taxes are more than twenty years in arrears there is a presumption that the tax has been paid. In support of this we are referred to *In re Commissioners of Trenton*, 17 *N. J. L. J.* 23, in which it is reported that Mr. Justice Abbett said that as to taxes "a presumption of payment arises after an absence of twenty years if there is no evidence to repel it and to show that the debt is still unsatisfied." Without conceding that such a presumption arises against the state, it is a sufficient answer in this case to say that such a presumption, if it exists, is rebutted by the admitted fact that none of the taxes now in dis-

pute have ever been paid. But aside from this all of these taxes beyond the twenty-year limit have been enforced by a sale and purchase by the taxing district for the period of thirty years which has not yet expired, and therefore it is still the owner subject to the owner's right of redemption if that right has not yet expired.

The next reason argued is that the certificate of the clerk included an installment of a sewer assessment amounting to $33, not yet payable, and that this amount, although deducted by the collector before the sale, was included in the certificate of the clerk. It is not denied that this amount was not included in the sum for which the sale was made, and the mere fact that there was a mistake in the amount claimed in the certificate of the clerk, which was corrected before the sale and it made for the true amount, will not vitiate the sale, for the owner was in no way injured because he could have redeemed before the sale by paying the correct amount for which the sale was made.

Another reason urged is that the certificate of the clerk included certain items of cost which were greater than that allowed by law—that is, that forty cents was charged in each case as a fee in excess of the legal amount. This does not make the sale illegal when it appears, as it does here, that the amount for which the property was sold, owing to other slight miscalculations, was not more than was due the township, excluding these alleged illegal fees, there being nothing to show that the owner offered to redeem for any sum due less these fees or that he made any objection thereto prior to the sale, or that he is now willing to redeem by paying the amount due.

The next reason urged is that the lands could not be advertised for sale to make the taxes of 1915 until after July 1st, 1916, prior to which time the land could not be sold for unpaid taxes for the year 1915. This claim is not sound, for there is nothing in the statute which prevents the advertising of the land for sale prior to the 1st day of July in each year; all that the statute forbids is a sale prior to that date, and in this case a sale was not made until after that date.

The next reason urged is that the advertisements of the sale were not put up in five of the most public places of the taxing district. It is not urged that the places were not public in the general sense of that word, but that two of the places were sometimes closed during business hours. The affidavit of the collector sets out that they were set up "in five or more of the public places of said township," as follows: one on a pole on the north side of Green street, "in front of the premises described in said notice," one in the post office, one in the printing office, one in a real estate office, one in a grocery store and one in the public room of a hotel, giving the name of each. We think this is sufficient proof, and must be taken as true, unless it is rebutted in a more substantial manner than appears in this case. They are all, in a fair sense, public places, and should be taken as such under this proof in the absence of anything which conclusively shows that they were not such public places as satisfies the law. What is a public place would depend upon the state of mind of anyone objecting to a public sale by any officer which required the posting of such notices.

The next reason urged is that the notice of sale did not state that the land would be sold in fee if no one would bid for a shorter term. Such a statement in the advertisement of the sale is not necessary, for the law fixes the duty of the officer which is to sell in fee unless some bidder at the sale is willing to pay the arrears in consideration of an estate less than a fee, and the report expressly states that no person bid for a shorter term than a fee, nor was it necessary, as next urged, that the return of the collector should state that it was required to sell the whole of the land, for that sufficiently appears, when, as he did, he reports he sold the entire tract to make the arrears.

The next and last reason urged is that the affidavit of mailing does not state that a copy of the advertisement was mailed to the owner of the land. The land belonged to the estate of Samuel Dally, deceased, of whose will Ephraim Cutter was the executor, and his affidavit shows that he mailed to Cutter as the executor of the estate of Samuel Dally, deceased, as-

sessed as owner, a copy of the notice which was enclosed in an envelope, with the postage prepaid, addressed to the said Ephraim Cutter; this is sufficient.

There not appearing in this record any sufficient reason why the certificate of sale should be set aside, the proceedings and sale will be confirmed, with costs.